UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | Bankruptcy Case No. 12 B 17133 |
| RICHARD REULAND and ELIZABETH REULAND, | Chapter 13 |
| Debtors. | Honorable Janet S. Baer |
| RICHARD REULAND and ELIZABETH REULAND, | Adversary Case No. 18 A 00021 |
| Plaintiffs, | |
| v. | |
| INTERNAL REVENUE SERVICE, | |
| Defendant. | |

**MEMORANDUM OPINION**

This matter is before the Court on the motion of the Internal Revenue Service (the "IRS") to dismiss the adversary complaint filed by Richard and Elizabeth Reuland. The Reulands' complaint seeks: (1) a determination that certain taxes owed to the IRS were discharged through their chapter 13 bankruptcy case; (2) a permanent injunction against the IRS from collecting such taxes; and (3) attorney's fees and costs. The IRS's motion requests that the complaint be dismissed for failure to state a claim upon which relief can be granted because the tax debt at issue is not dischargeable pursuant to 11 U.S.C. §§ 1328(a)(2) and 523(a)(1)(B)(ii).[1] For the reasons set forth below, the Court will dismiss the complaint with prejudice.

---

[1] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I), and (L).

## BACKGROUND

Richard and Elizabeth Reuland did not file returns for tax years 2002 through 2011 until early April 2012. (Adversary No. 18 A 00021, Docket No. 13 at 2.[2]) On April 26, 2012, about three weeks after filing those returns, the Reulands filed a chapter 13 bankruptcy petition, along with the required plan, statements, and schedules. (Bankr. Dkt. 1 & 2.) Their schedules listed $89,776 in tax debt owed to the IRS. (Bankr. Dkt. 1 at 17.) The plan proposed to pay that entire amount over five years. (Bankr. Dkt. 2 at 3.)

Early in the case, the IRS filed a proof of claim which it amended several times to reflect the recently filed returns as they were processed. (Adv. Dkt. 11 at 2-3.) The IRS's proof of claim, as finally amended, asserted that the Reulands owed tax debt totaling $128,885.44 as of the date of the bankruptcy petition, $73,290.44 in priority debt for 2009 through 2012 and $55,595 in general unsecured debt for 2002 through 2008. (Claim No. 1-4 at 3.) The Reulands did not object to the IRS's proof of claim. Instead, they amended their plan to pay 100% of the IRS's priority claim and approximately 13% of the total general unsecured claims. (Bankr. Dkt. 30 at 3, ¶¶ 6 & 8.) The Court confirmed the amended plan on November 2, 2012, and the IRS did not object to or appeal its confirmation. (Bankr. Dkt. 35.)

---

[2] All references to the adversary docket ("Adv. Dkt.") are to Adversary Case No. 18 A 00021, all references to the bankruptcy docket ("Bankr. Dkt.") are to Bankruptcy Case No. 12 B 17133, and all references to the claims register ("Claim No.") are to Bankruptcy Case No. 12 B 17133.

2

The plan provided for the treatment of all general unsecured claims, in relevant part, as follows:

> *General unsecured claims (GUCs).* All allowed nonpriority unsecured claims, not specially classified, including unsecured deficiency claims under 11 U.S.C. § 506(a), shall be paid, pro rata, . . . to the extent possible from the payments set out in Section D, but not less than 13 % of their allowed amount.

(Bankr. Dkt. 30 at 3, ¶ 8.)

Over the next five years, the Reulands made monthly payments under the confirmed plan. After they had finished making all of the required payments, the Court entered a discharge order which explained the breadth of a chapter 13 discharge. (*See* Bankr. Dkt. 68 at 1.) The order informed the Reulands, in pertinent part, that "[s]ome debts are not discharged[.] Examples of debts that are not discharged are . . . debts for certain types of taxes specified in 11 U.S.C. §§ 507(a)(8)(C), 523(a)(1)(B), [and] 523(a)(1)(C) to the extent not paid in full under the plan[.]" (*Id.*)

Upon completion of the plan, the IRS had received $73,290.44 in payment of its priority claim and $3,424.50 in payment of its general unsecured claim, leaving a substantial portion of the general unsecured claim unpaid. (Adv. Dkt. 1 at 3.) Within two months after the Court entered the discharge order and the Clerk of Court closed the case, the Reulands began to receive collection notices from the IRS for the unpaid balance. (*Id.*) As of April 12, 2018, the IRS asserts that the Reulands still owe principal and interest totaling $68,574.07 for 2002 through 2008, and interest totaling $1,533.43 for 2009 and 2010.[3] (Adv. Dkt. 11 at 3.)

---

[3] For purposes of this Memorandum Opinion, the Court has used the figures set forth in the memorandum filed in support of IRS's motion to dismiss. (*See* Adv. Dkt. 11 at 3.) The Court notes, however, that these figures differ from those provided in the unsigned declaration of an IRS employee that is attached to the motion as Exhibit 7. Nevertheless, the exact figures are irrelevant here because the parties have asked the Court to address only whether the debt has been discharged, not the amount of the debt. Therefore, nothing in this Memorandum Opinion or the corresponding order granting the motion to dismiss should be construed to establish the amount of outstanding debt owed to the IRS by the Reulands.

3

On January 8, 2018, the Reulands filed an adversary complaint seeking a determination that the unpaid tax debt had been discharged through their chapter 13 bankruptcy case. (Adv. Dkt. 1.) In response, the IRS filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b)), alleging that the Reulands' complaint fails to state a claim upon which relief can be granted both because the unpaid tax debt is not dischargeable pursuant to §§ 1328(a)(2) and 523(a)(1)(B)(ii) and because the plan did not provide for its discharge. (*See* Adv. Dkt. 10 & 11.) The Court has reviewed the relevant statutory provisions, applicable case law, and arguments of the parties and is now ready to rule.

## STATUTORY PROVISIONS

The provisions of the Bankruptcy Code relevant to the Court's decision are §§ 1328(a)(2) and 523(a). Together, those sections establish several types of debt that are excepted from a chapter 13 discharge. Section 1328(a)(2) provides, in relevant part, as follows:

> (a) [A]s soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
>
> * * *
>
> (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)[.]

11 U.S.C. § 1328(a)(2). Section 523(a)(1)(B)(ii), in turn, states as follows:

> (a) A discharge . . . does not discharge an individual debtor from any debt—
>
> (1) for a tax or a customs duty—
>
> * * *
>
> (B) with respect to which a return, or equivalent report or notice, if required . . .

4

\* \* \*

> (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition[.]

11 U.S.C. § 523(a)(1)(B)(ii).

The exception to discharge for debts resulting from tax returns filed both late and less than two years before bankruptcy is a product of the "delicate balance between [the] priority and discharge" provisions of the Bankruptcy Code. *See In re Official Comm. of Unsecured Creditors of White Farm Equip. Co.*, 943 F.2d 752, 756 (7th Cir. 1991). Those provisions are designed to address "a three-way tension among the interests of: (1) the public in collecting taxes; (2) the general [unsecured] creditors who lose out to excessive tax accumulation; and (3) the debtor in achieving a fresh start." *Savaria v. United States (In re Savaria)*, 317 B.R. 395, 397 (B.A.P. 9th Cir. 2004) (citing S. Rep. No. 95-989, 95th Cong., 2d Sess. 14 (1978)), *overruled on other grounds by In re Joye*, 578 F.3d 1070, 1078 (9th Cir. 2009).

Tax debts that are less than three years old are given priority status and are nondischargeable. *See* 11 U.S.C. §§ 507(a)(8)(i) and 523(a)(1)(A). Tax debts that are more than three years old for which returns were filed on time or more than two years before bankruptcy are not given priority status and are generally dischargeable. *Savaria*, 317 B.R. at 397 (stating that such debts are considered an unjustifiable burden on other unsecured creditors). Tax debts that are more than three years old for which returns were filed both late and less than two years before bankruptcy are not given priority but are nondischargeable. 11 U.S.C. § 523(a)(1)(B)(ii); *Savaria*, 317 B.R. at 398 (noting that the fault for such debts being stale and uncollected can be placed on the debtor).

5

The exception for tax returns filed both late and less than two years before bankruptcy allows "the [IRS] a reasonable time to collect the tax" because "[u]ntil [a] return is filed, the [IRS] cannot be expected to take action to assess or collect the tax." *Greenstein v. Ill. Dep't of Revenue (In re Greenstein)*, 95 B.R. 583, 585 (Bankr. N.D. Ill. 1989). The Bankruptcy Code is, in effect, "making a policy decision in favor of the tax collector over the debtor's need for sufficient property to make a fresh start." *Etheridge v. Illinois*, 127 B.R. 421, 422 (C.D. Ill. 1989) (citing Ginsberg on Bankruptcy ¶ 6104, at 6026 (Supp. 1988)).

**DISCUSSION**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the Court must view it in the light most favorable to the plaintiff and accept all well-pled facts as true. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). In addition, the Court may "take judicial notice of matters of public record," including the contents of the case docket. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997).

A complaint states a claim upon which relief can be granted only if it clears two hurdles. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must contain enough factual information to give the defendant "fair notice of what the claim is and the grounds upon which it rests[.]" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)). Second, the complaint must plausibly suggest that the plaintiff has a right to relief, and the allegations must raise that right above a "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570.

Although plausibility demands only "enough details about the subject-matter of the case to present a story that holds together[,]" *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010), a plaintiff "can plead [itself] out of court by pleading facts that show [it] has no legal claim." *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011). As a result, Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). If, as a matter of law, "no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed[.]" *Id.* at 327 (internal quotation and citation omitted).

The determination here turns on whether the tax debt at issue was discharged through the Reulands' chapter 13 bankruptcy case. Even viewing the complaint in the light most favorable to the Reulands and accepting all well-pled facts as true, if the debt was not discharged as a matter of law, then there is no legal basis for the relief requested and the complaint must be dismissed.

The Reulands concede that the tax debt at issue is not dischargeable pursuant to §§ 1328(a)(2) and 523(a)(1)(B)(ii).[4] *See* 11 U.S.C. §§ 1328(a)(2) & 523(a)(1)(B)(ii). They argue, however, that under *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), the tax debt at issue was discharged because their plan provided for the debt and the IRS failed to object to or

---

[4] Courts considering the dischargeability of § 523(a)(1)(B)(ii) tax debt in chapter 13 cases have consistently held that it is not dischargeable. *See generally In re Regier*, No. 09-60828, 2015 WL 367103, at *2 (Bankr. W.D. Mo. Jan. 27, 2015) (concluding that "reading §§ 1328(a)(2), 523(a)(1)(B)(ii), and 507(a)(8)(A)(i) together creates a class of income tax debts which are not entitled to priority because the returns are last due, without extensions, more than three years prepetition, but are nondischargeable because the returns were tardily filed within two years prepetition"); *Ollie-Barnes v. IRS (In re Ollie-Barnes)*, No. 09-82198, 2014 WL 5794866, at *5-6 (Bankr. M.D.N.C. Nov. 6, 2014) (determining that certain tax debt had not been discharged through the debtor's chapter 13 bankruptcy case because the debt fell under § 523(a)(1)(B)(ii)); *In re Carlin*, No. 11-11784, 2014 WL 5023653, at *2-3 (Bankr. S.D.N.Y. Oct. 7, 2014) (holding that the debtor's § 523(a)(1)(B)(ii) tax debt had not been discharged because, among other things, the "plan [was] silent on any specific debt due [to] the IRS"); *In re Watson*, No. 06-11199, 2007 WL 3231529, at *3 (Bankr. E.D. Va. Oct. 30, 2007) (noting that if a claim for § 523(a)(1)(B)(ii) tax debt were allowed, the percentage not paid through the plan would not be discharged).

7

appeal confirmation. In response, the IRS argues that *Espinosa* is inapplicable here because the Reulands' plan did not contain any specific language purporting to discharge the tax debt.

### *Espinosa*, the Tax Debt, and the Reulands' Plan

In *Espinosa*, the United States Supreme Court held that, under certain circumstances, a confirmed plan that provides for the discharge of otherwise nondischargeable debts is not void. *See Espinosa*, 559 U.S. at 276. Specifically, the Court rejected a creditor's request to void an order confirming a plan that contained specific language discharging student loan interest, even though such debt is not dischargeable under §§ 1328(a)(2) and 523(a)(8). *Id.* The Court refused to set aside the confirmation order because the creditor received actual notice of the plan's contents and failed to object to or appeal confirmation. *Id.* at 272-76. *Espinosa* is not analogous to the Reulands' case because the two cases involve different statutory provisions, procedural postures, and plan language.

#### 1. Statutory Provisions at Issue

The Supreme Court in *Espinosa* cautioned in Footnote 10 that its holding should not be blindly applied to other statutory exceptions to discharge. *See id.* at 273 n.10. Specifically, the Court stated:

> Sections 1328(a) and 523(a)(8) provide that student loan debt is dischargeable in a Chapter 13 proceeding *if* a court makes a finding of undue hardship. In contrast, other provisions in Chapter 13 provide that certain other debts are not dischargeable under *any* circumstances. *See, e.g.,* §§ 523(a)(1)(B), (C) (specified tax debts); § 523(a)(5) (domestic support obligations); § 523(a)(9) (debts "caused by" the debtor's unlawful operation of a vehicle while intoxicated). We express no view on the conditions under which an order confirming the discharge of one of these types of debt could be set aside as void.

*Id.*

Thus, the Court expressly observed that § 523(a)(1)(B) tax debt is different from § 523(a)(8) student loan debt for purposes a chapter 13 discharge. Indeed, §§ 523(a)(1)(B) and 523(a)(8) differ significantly because the latter expands the authority of the bankruptcy court. *See id.* at 273. That is, § 523(a)(8) authorizes a bankruptcy court to discharge student loan debt *if* it makes a finding of undue hardship, while § 523(a)(1)(B) does not permit a bankruptcy court to do the same with respect to tax debt. *See* 11 U.S.C. §§ 523(a)(8) & (a)(1)(B).

### 2. Procedural Posture of the Reulands' Case

Footnote 10 in *Espinosa* also sheds light on an important procedural distinction from the Reulands' case. As alluded to in the final sentence of the footnote, *Espinosa* made its way to the Supreme Court on the creditor's Rule 60(b)(4) motion to void the plan confirmation order.[5] *Espinosa*, 559 U.S. at 263. Importantly, "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271. Accordingly, the Court held that Espinosa's plan confirmation order was not void because, although the bankruptcy court made a legal error by failing to find that the student loan debt imposed an undue hardship, such an error is not a jurisdictional or due process failing that would render an order void. *Id.* at 273-76.

---

[5] Federal Rule of Civil Procedure 60(b)(4) provides, in pertinent part, as follows:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> * * *
>
> (4) the judgment is void[.]

Fed. R. Civ. P. 60(b)(4).

9

In contrast, the Reulands' case is before the Court on the IRS's Rule 12(b)(6) motion to dismiss. Rather than applying the standards that guide a court's decision as to whether to void an order, the Court here must apply the rules that govern dismissal of a complaint. Specifically, the Court must determine whether the Reulands have a legal basis for their argument that the plan in their case provided for discharge of the tax debt at issue. If the answer is no, then the IRS's failure to object to or appeal plan confirmation was inconsequential and the complaint must be dismissed for failure to state a claim upon which relief can be granted.

### 3. Lack of Specific Language in the Reulands' Plan

In support of their argument that the IRS's failure to object to or appeal confirmation of the plan resulted in discharge of the tax debt at issue, the Reulands cite only to *Espinosa* and *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083 (9th Cir. 1999). In both of those cases, the debtors' plans contained specific language that provided for the discharge of otherwise nondischargeable student loan debt. In *Pardee*, the debtor's plan stated:

> Great Lakes Education shall be paid through the Plan and Great Lakes Higher Education shall receive the total amount of $26,235.00 for its claim and *any remaining unpaid amounts, if any, including any claims for interest, shall be discharged by the Plan.*

*Pardee*, 193 F.3d at 1086 n.5 (emphasis added). Similarly, the debtor's plan in *Espinosa* proposed "to repay only the principal on [the student loan] debt, stating that the remainder—the accrued interest—would be discharged once Espinosa repaid the principal." *Espinosa*, 559 U.S. at 264.

When the Reulands were challenged to point out a similar provision in their own plan, they stated that "[t]he Chapter 13 plan . . . clearly showed the treatment of the General Unsecured taxes." (Adv. Dkt. 13 at 7.) The Reulands did not cite to any specific plan language. After a thorough inspection of their plan, the Court concludes that the Reulands must be referring to

10

Paragraph 8 of Section E, which provides for the treatment of all general unsecured claims. In relevant part, Paragraph 8 states, as follows:

> *General unsecured claims (GUCs).* All allowed nonpriority unsecured claims, not specially classified, including unsecured deficiency claims under 11 U.S.C. § 506(a), shall be paid, pro rata, . . . to the extent possible from the payments set out in Section D, but not less than 13 % of their allowed amount.

(Bankr. Dkt. 30 at 3.)

The only provision in the Reulands' plan that affects the IRS's § 523(a)(1)(B)(ii) tax debt is the boilerplate paragraph set forth above. Nothing in that paragraph suggests that the § 523(a)(1)(B)(ii) tax debt remaining unpaid upon completion of the plan would be discharged. In stark contrast to the debtors' plans in *Espinosa* and *Pardee*, the Reulands' plan is silent as to the dischargeability of the debt at issue. Apparently predicting that the lack of specific language might defeat their argument, the Reulands filed a memorandum in opposition to the IRS's reply, which stated as follows:

> The Supreme Court allowed Espinosa's non-dischargeable debt to be discharged not because [of] Espinosa's [specific] plan G language; the *Espinosa* Court granted a discharge because the creditor failed to exercise its rights by not filing an objection to the Chapter 13 plan.
>
> * * *
>
> Yes, the taxes in *Reuland* were non-dischargeable under § 523(a)(1)(B)(ii).
>
> Yes, the taxes in *Reuland* were lacking specific plan language.
>
> The remedy for these obvious defects is for the United States to have *timely* filed an objection to the plan, and this issue would have been resolved.
>
> In keeping with the precedent established in *Pardee* and *Espinosa*, [the] Reulands, through their attorney, encourage this Honorable Court to find in favor of the Reulands.

(Adv. Dkt. 16 at 4.)

The Reulands appear to be citing *Espinosa* and *Pardee* for the proposition that, even if a chapter 13 plan does not address the dischargeability of a nondischargeable debt, that debt will be discharged unless the creditor objects to confirmation. Neither case reached that conclusion. Rather, *Espinosa* and *Pardee* held that if a plan contains specific language discharging an otherwise nondischargeable student loan debt and the creditor fails to object to confirmation, then the confirmation order is not void. Fundamental to each case was the fact that the debtor's plan contained a specific provision regarding the discharge of the student loan debt and the creditor had received notice of the contents of the plan. *See Espinosa*, 559 U.S. at 264, 272, 275 & 276 (referring to the specific provision and plan contents); *Pardee*, 193 F.3d at 1084-87 (same).

Other courts considering the effect of *Espinosa* on a plan that lacks specific language about the discharge of nondischargeable tax debt have concluded that a creditor's failure to object to or appeal confirmation does not cause the debt to be discharged. *See In re Moore*, No. 08-40118, 2013 WL 4017936, at *5 (Bankr. M.D. Ga. Aug. 6, 2013); *see also United States v. Monahan (In re Monahan)*, 497 B.R. 642, 652 (B.A.P. 1st Cir. 2013). The facts in *Moore* mirror the facts here. In November 2007, Moore filed a return for tax year 2002. *Moore*, 2013 WL 4017936, at *1. Three months later, in February 2008, she filed a chapter 13 bankruptcy case. *Id.* Moore's plan provided for payment of 0% to general unsecured creditors. *Id.* Upon completion of the plan, entry of discharge, and closure of the case, the IRS attempted to collect the unpaid taxes for 2002. *Id.* In response, Moore sought a finding that the IRS had violated the discharge injunction by attempting to collect the debt. *Id.* While Moore did not dispute that the debt was nondischargeable pursuant to §§ 1328(a)(2) and 523(a)(1)(B)(ii), she argued that the discharge of general unsecured claims encompassed the tax debt and that *Espinosa* was controlling. *Id.* at *5-6.

Ultimately, the *Moore* court held that the § 523(a)(1)(B)(ii) tax debt had not been discharged because, without a provision specifically addressing the dischargeability of the debt, the "plan could not possibly have given sufficient notice to the IRS[.]" *Id.* at *11. In reaching its decision, the court made several important observations about the *Espinosa* decision. First, as this Court has discussed above, the *Moore* court noted that, because the creditor in *Espinosa* "brought [its] action on a motion for relief from judgment under Rule 60(b)(4), [the Supreme Court's] holding is confined to that provision." *Id.* at *7 (quoting *Espinosa*, 559 U.S. at 269 n.8). Further, the *Moore* court focused heavily on the statutory distinction made in Footnote 10 of *Espinosa*:

> With this footnote, the Supreme Court eliminated *Espinosa's* precedential value for the discharge of nondischargeable debts that do not have statutory exceptions to discharge—including § 523(a)(1)(B) tax debts. The [tax debt] at issue here is nondischargeable under § 523(a)(1)(B)(ii). The debtor's reliance on *Espinosa* is misplaced because the Supreme Court did not intend for *Espinosa* to be precedent as to nondischargeable tax debts.

*Id.* Applying *Espinosa's* rationale, the *Moore* court stated that "[a] student loan obligation that does not impose an undue hardship is arguably equivalent to a § 523(a)(1)(B) tax debt—both are unquestionably nondischargeable in bankruptcy." *Id. Moore* also drew an analogy to an Eleventh Circuit case which held that § 523(a)(5) domestic support obligations were nondischargeable because § 1328(a)(2) "'restricts or prohibits entirely the discharge of certain types of debts.'" *Fla. Dep't of Revenue v. Diaz (In re Diaz)*, 647 F.3d 1073, 1089 (11th Cir. 2011) (quoting *Espinosa*, 559 U.S. at 268). Finally, the *Moore* court turned to the plan language at issue in the case. *Moore* 2013 WL 4017936, at *10. Much like the Reulands' plan, Moore's contained boilerplate language providing for minimal payments to general unsecured creditors and did not include any specific language addressing the nondischargeable tax debt. *Id.* Thus, the court held that the plan did not give sufficient notice to the IRS that Moore intended to discharge the otherwise nondischargeable § 523(a)(1)(B)(ii) tax debt. *Id.* at *11.

*United States v. Monahan,* the other published decision with facts analogous to this case, dealt with post-petition interest on § 507(a)(8)(C) trust-fund tax debt, which is given priority and is nondischargeable to the extent not paid through a plan. *See Monahan*, 497 B.R. at 648-50. Monahan's plan provided for payment of the nondischargeable tax debt in full, but it did not specifically provide for discharge of post-petition interest on the nondischargeable tax debt. *Id.* at 651. After completion of the plan, entry of discharge, and closure of the case, the IRS attempted to collect the unpaid post-petition interest. *Id.* at 644. Monahan filed a motion requesting a protective order and seeking a determination both that the debt had been discharged and that the IRS had violated the discharge injunction. *Id.* at 643. She made the same argument that the Reulands do here, that the IRS was barred from collecting such debt because it was bound by the confirmation order under *Espinosa. Id.* at 645.

After the bankruptcy court granted Monahan's motion, the bankruptcy appellate panel reversed the decision, concluding that, "[i]n the absence of language clearly providing for a discharge of the priority tax claim for so-called trust fund taxes, the debtor failed to give the IRS the clear, open, and unambiguous notice of any intent to discharge such claim which the decision in *Espinosa* and due process require[]." *Id.* at 652. The appellate panel focused on the fact that, "unlike *Espinosa*, the confirmed plan in [Monahan's] case did not provide for the discharge of the priority tax claim upon completion of the plan." *Id.* at 651. That distinction, the panel held, went to the heart of *Espinosa's* instruction that "'[d]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 652 (quoting *Espinosa*, 559 U.S. at 272 (internal quotations and citations omitted)). The absence of a specific, express plan provision thus

deprived the creditor of "clear, open, and unambiguous notice of any intent to discharge" the otherwise nondischargeable tax debt. *Id.*

*Espinosa's* holding and the cases applying it only when a plan contains specific discharge language are directly applicable to the Reulands' case. As both *Moore* and *Monahan* rightly observed, *Espinosa* specifically held that a confirmed plan is not void if it purports to discharge an otherwise nondischargeable debt, but only insofar as the plan contains a specific provision to that effect. Without any specific language in the Reulands' plan impairing the rights of the IRS, it is unreasonable to expect that the IRS would object to the plan—especially in light of the fact that nearly all plans contain a similar provision about general unsecured claims. The boilerplate provision about the percentage at which general unsecured claims will be paid through the plan cannot be construed to discharge otherwise nondischargeable debt. Absent express, specific language that provides for the discharge of such debt, the Court will not interpret a plan to do so after the fact. The IRS is indisputably bound by the terms of the Reulands' plan, but it cannot be bound by a provision that does not exist. The unambiguous statutory provisions at issue and the applicable case law compel the Court to conclude that the Reulands' unpaid tax debt was not discharged through their chapter 13 bankruptcy case.

Although not outcome-determinative here, it is worth noting that the language of the discharge order (which is identical to the language in the national form discharge order) aligns with the Court's decision. The discharge order explained to the Reulands that some debts were not discharged—specifically, debts for certain types of taxes specified in 11 U.S.C. § 523 (a)(1)(B), to the extent not paid in full under the plan. (*See* Bankr. Dkt. 68 at 1); *Chapter 13 Discharge*, United States Courts (Dec. 1, 2015), www.uscourts.gov/file/18684/download.

While the result reached here is undoubtedly frustrating for the Reulands, their case provides a prime example of how the Bankruptcy Code treats debts owed for late-filed tax returns. As discussed above, the priority and discharge provisions aim to balance the interests of the public in collecting taxes, general creditors from losing out to excessive tax debt, and debtors in achieving a fresh start. *Savaria*, 317 B.R. at 397. Here, those interests are balanced by the full payment of priority tax debt; the partial payment of the tax debt for late-filed returns, with the unpaid portion being excepted from discharge; and the partial payment of the other general unsecured debt, with the unpaid portion being discharged. The result here demonstrates that the "statutory scheme concerning nondischargeability of tax debts reflects an emphasis on timely filing." *See Copeland v. Fink (In re Copeland)*, 742 F.3d 811, 814 (8th Cir. 2014). Indeed, prior to the enactment of the Bankruptcy Code, the Supreme Court recognized that the statutory exception to discharge for some tax debts "is not a compassionate section for debtors. Rather, it demonstrates congressional judgment that certain problems—e.g., those of financing government—override the value of giving the debtor a wholly fresh start." *Bruning v. United States*, 376 U.S. 358, 361 (1964).

In sum, the Court holds that the tax debt at issue was not discharged and that the Reulands' complaint therefore fails to state a claim upon which relief can be granted. The Reulands' reliance on *Espinosa* and *Pardee* is misplaced because the plan in this case did not contain any provision addressing the dischargeability of the tax debt at issue.

Turning to the remainder of the complaint, the Court finds that the IRS did not violate the § 524(a)(2) discharge injunction because that injunction prohibits the collection of only those debts that were discharged. *See, e.g., Diaz*, 647 F.3d at 1088 (noting that the discharge injunction does not apply to nondischargeable debts). Similarly, the Reulands' are not entitled to a permanent injunction because the IRS is permitted to collect debts that were not discharged. Finally, because

the Reulands' complaint will be dismissed with prejudice, the Court will deny their request for attorney's fees and costs.

## CONCLUSION

For the foregoing reasons, the Court will grant the IRS's motion, and the complaint will be dismissed with prejudice. The complaint fails to state a claim upon which relief can be granted because, even accepting all well-pled facts as true and viewing them in the light most favorable to the Reulands, there is no legal basis for any of the relief requested.

Dated: **October 26, 2018**

ENTERED:

_/s/ Janet S. Baer_
Janet S. Baer
U.S. Bankruptcy Judge